Exhibit A

Code Name: " NYPE 93"
Recommended by:
The Baltic and International Maritime Council(BIMCO)
The Federation of National Associations of
Ship Brokers and Agents (FONASBA)

# TIME CHARTER©

New York Produce Exchange Form

*Issued by the Association of Ship Brokers and Agents (U.S.A.) Inc.*

November 6th, 1913—Amended October 20th, 1921;August 6th, 1931;October 3rd,1946
Revised June 12th, 1981;September 14th 1993.

THIS CHARTER PARTY, made and concluded in . . . . . . . . . . . , Madrid, Spain . . . . . . . . . . . . . . .
this *14th.* . . . . . . . . . . . . . . . . day *of December, 2005.* . . . . . . . . . . . . . . . . . .

Between . . . . . . . . . . Hanjin Shipping Co.,Ltd, Seoul, Korea
. . (See Clause No. 47) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
As disponent Owners of the Vessel described below, and Compañia Trasatlantica Española
S . A . , M a d r i d   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Charterers.

Description of Vessel
(See Clause No. 47 & 111)

Name . . . . . . . . . . . . . . Flag  . . . . . . . . . . . . . . . Built  . . . . . . . . . . . . . . . . . . . . . . . . . (year).
Port and number of Registry  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Classed . . . . . . . . . . . . . . . . . . . . . . . . . . . . In . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Deadweight . . . . . . . . . . . . . . . . long*/metric* tons (cargo and bunkers, including freshwater and
stores not exceeding . . . . . . . . . . . . long*/metric* tons) on a salt water draft of . . . . . . . . . . . .
on summer freeboard.
Capacity . . . . . . . . . . . . . . . . . .  cubic feet grain . . . . . . . . . . . . . . . . . . cubic feet bale space.
Tonnage . . . . . . . . . . . . . . . . . . . . . . . . GT/GRT.
Speed about  . . . . . . . knots, fully laden, in good weather conditions up to and including maximum
Force . . . . on the Beaufort wind scale, on a consumption of about  . . . . . . . . . . . . long*/metric*
tons of  . . . . . . . . . . . . . . . . . . . . . . . . .

* Delete as appropriate.
For further description see Appendix "A" (if applicable)

1.   Duration
The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period
of a time charter period of about 40/45 days without guarantee via sp(s) sb(s) sa(s) aa awiwl with
lawful/harmless cargos as per cargo exclusion stipulated in charter party
CL.49 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Ex A

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . within below mentioned trading limits. 3

### 2.  Delivery

3

The Vessel shall be placed at the disposal of the Charterers at  *On Dropping Last Outward Sea* 3

*Pilot Hamburg Any Time*, Day and Night, Sunday, Holiday 3

included  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Vessel on her delivery

shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted 3

for ordinary cargo service, having water ballast and with sufficient power to operate all cargo-handling gear 3

simultaneously.   (See Clause No. 53)

The Owners shall give the Charterers not less than          07/05/03/02/01          days notice 3

o   f          e   x   p   e   c   t   e   d          d   a   t   e          o   f 4

delivery. 4

4

### 3.  On-Off Hire Survey
  (See Clause No. 74) 4

~~Prior to delivery and redelivery the parties shall, unless otherwise agreed, each appoint surveyors, for their~~ 4

~~respective accounts, who shall not later than at first loading port/last discharging port respectively, conduct~~ 4

~~joint on-hire/off hire surveys, for the purpose of ascertaining quantity of bunkers on board and the condition~~ 4

~~of the Vessel. A single report shall be prepared on each occasion and signed by each surveyor, without~~

~~prejudice to his right to file a separate report setting forth items upon which the surveyors cannot agree.~~ 4

~~If either party fails to have a representative attend the survey and sign the joint survey report, such party~~

~~shall nevertheless be bound for all purposes by the findings in any report prepared by the other party.~~ 4

~~On-hire survey shall be on Charterers' time and off-hire survey on Owners' time.~~ 5

5

### 4.  Dangerous Cargo/Cargo Exclusion
  (See Clause No. 49) 5

(a)  ~~The Vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous,~~ 5

~~injurious, flammable or corrosive nature unless carried in accordance with  the requirements or~~ 5

~~recommendations of the competent authorities of the country of the Vessel's registry and of  ports of~~ 5

~~shipment and discharge and of any intermediate countries or ports through whose waters the Vessel must~~ 5

~~pass. Without prejudice to the generality of the foregoing,  in addition the following are  specifically~~ 5

~~excluded; livestock of any description, arms, ammunition, explosives, nuclear and radioactive materials.~~ 5

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

(b)  ~~If IMO classified cargo is agreed to be carried, the amount of such cargo shall be limited to~~

~~. . . . . . . . . . . . . . . . . . . . . . tons and the Charterers shall provide the Master with any evidence he may~~

~~reasonably require to show that the cargo is packaged, labelled, loaded and stowed in accordance with IMO~~    7
~~regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at~~    7
~~the Charterers' risk and expense.~~    7
                                                                                                                    7
                                                                                                                    7
**5.    Trading Limits    (see clause 48**                                                                          7
                                                                                                                    7
The Vessel shall be employed in such lawful trades between safe ports and safe places
within

**6.    Owners to Provide**

The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for
all provisions, cabin, deck, engine-room and other necessary stores, including boiler water;    7
drinking water and lubricating oil    shall pay for
wages, consular shipping and discharging fees of the crew and also all consular fees necessitate    7
because of the vessel's nationality or flag, also all garbage removal charges for port services
pertaining to the    7l
crew; and the Owner's business shall maintain the Vessels' class and keep her in a thoroughly efficient    7
state in hull, machinery and
equipment with all certificate (including tonnage and measurement certificates) necessary to comply    8l
with the current requirements at port of call and canals for and during the service, failing which
Owners are responsible for and during the service, and have a full complement of officers and
crew.    8

**7.    Charterers to Provide**    8!

The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise
agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen and compulsory
garbage disposal), canal tolls, all communication expenses pertaining to the Charterers' business
at cost, pilotages(including customary pilotages, daldanelles and torres strait,skaw,japan-inland
sea),
towages, agencies for Charterers' business, commissions, consular charges  (except those pertaining to    8:
individual crew members
or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel    8
puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all    8
such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew    8l
shall be for the Owners' account.  Fumigations ordered because of cargoes carried or port visited while    8(
the Vessel is employed under the Charter Party shall be for the Charterers' account. All other fumigations
shall be for the Charterers' account after the Vessel has been on charter for a continuous period of six    8
months or more.
                                                                                                                    8l
The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a    8l
special trade or unusual cargo, but the Owners shall allow them the use of any dunnage already aboard    9(
the Vessel.  Prior to redelivery the Charterers shall remove their dunnage and fittings at their cost and in    9J
their time.    9:
                                                                                                                    9:
                                                                                                                    9-
**8.    Performance of Voyages**
                                                                                                                    9[
(a)  The Master shall perform the voyages with due despatch, and shall render all customary assistance    9(

with the Vessel's crew.  The Master shall be conversant with the English language and (although 8
appointed by the Owners) shall be under the orders  and directions of the Charterers as regards vessel's 9
employment and agency; and the Charterers shall perform all cargo handling, including but not limited to
loading, stowing, trimming, lashing, securing, dunnaging, unlashing, discharging, and tallying, at their risk 9
and expense, under the supervision of the Master.

10

(b)  If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or 10
officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and,  if 10
necessary, make a change in the appointments. 10

10
10

9.    Bunkers 10

(a)  The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and 10
diesel oil remaining on board the Vessel as  hereunder.  The Vessel shall be delivered with; 10
~~. . . . . . . . . . . . . . long*/metric* tons of fuel oil at the price of . . . . . . . . . . . . . . . . . . . . per ton;~~ 10
~~. . . . . . . . . . . . . tons of diesel oil at the price of . . . . . . . . . . . . . . . . per ton. The vessel shall~~
~~be redelivered with: about same quantity as on delivery . . . . tons of fuel oil at the price of . . . . per ton;~~
~~. . . . . . . . . . . . . . . . . . . . . . . tons of diesel oil at the price of . . . . . . . . . . . . . . . . . . per ton;~~ 10
  *Bunker on delivery as on board to be about 880mt ifo and about 60mt mdo* 11
  *Bunker on redelivery to be about same as actually on delivery* 11
  *Bunker price bends usd270pmt for ifo and usd550pmt for mdo*
  *1st hire plus value of bunker on delivery to be paid within 3banking days after vessel's delivery.*
  *Charterers are entitled to deduct from last sufficient hire payments estimated owners* 11
  *Disbursements but maximum usd1,000 per port as well as value of bunker of redelivery.* 11
11
* Same tons apply throughout this clause. 11

(b)  The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and
auxiliaries and which conform to the specification(s) as set out in Appendix A. The master testify
the specification(s) of bunkers before bunkering, and has the right to reject bunkering in case that
bunkers to be supplied do not confirm with mutually agreed specification(s).

~~The Owners reserve their right to make a claim against the Charterers for any damage to the main engines~~
~~or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed~~
~~specification(s).~~  Additionally,  if bunker fuels supplied do not conform with the mutually agreed 11
specification(s), or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners 11
shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker 11
consumption, ~~nor~~ neither for any time lost ~~and~~ nor any other consequences.

10.   Rate of Hire/Redelivery Areas and Notices
11
The Charterers shall pay for the use and hire of the said Vessel at the rate of US$14,000 (U.S. 12
Dollars Fourteen Thousand ) daily including overtime  15days in advance 12
U.S. currency, ~~daily, or $  . . . . . . . . . . . . . U.S. currency per ton on the Vessel's total deadweight~~ 12
~~carrying capacity, including bunkers and stores, on . . . . . . . . . . summer freeboard, per 30 days,~~ 12
commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part 12
of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition,
ordinary wear and tear excepted, to the Owners (unless Vessel lost) ~~at~~ on Dropping Last 12
Outbound Sea Pilot one(1) safe port Tampa-Veracruz range, Any Time, Day and Night, Sunday,
Holidays included . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . unless otherwise mutually agreed. 12

The Charterers shall give the Owners not less than 15/10/05/03/02/01 days notice of the Vessel's 12

expected date and probable port of redelivery.                                             12

                                                                                           12

For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be    13
adjusted to GMT.                                                                           13

                                                                                           13

11.  Hire Payment                                                                          13

                                                                                           13

(a)  Payment                                                                               13

Payment of Hire shall be made so as to be received by the Owners of their designated payee in    13
Seoul ................................ , via ..................................
Correspondent Bank : Citibank N.A New York(CITIUS 33) U.S.A.                                13
Swift Code : SHBKKRSE,                                                                      13
Account NO.360-46772
For Credit to Shinhan Bank                                                                  13
Yoido Choongang Branch, Seoul, Korea
Account no. : 383-81-100290                                                                 14
In Favor Of Hanjin Shipping Co.,Ltd
Ref MV.Great River                                                                          14
......................... currency, or in United States Currency, in funds available to the    14
Owners on the due date, 15 *days* in advance, and for the last month or part of same the approximate    14
amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day    14
as it becomes due, if so required by the Owners.  Failing the punctual and regular payment of the hire,    14
or on any fundamental breach whatsoever of this  Charter Party, the Owners shall be at liberty to    14
withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners)    14
may otherwise have on the Charterers.                                                       14

                                                                                           14

At any time after the expiry of the grace period provided in Sub-clause 11 (b) hereunder and while the    15
hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold    15
the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever    15
for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire
shall continue  to accrue and any extra expenses  resulting from such withholding  shall be for the    15
Charterers' account.                                                                       15

                                                                                           15

(b)  Grace Period                                                                          15
     (See Clause No. 52)                                                                    15
~~Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors~~    15
~~or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners~~
~~... clear banking days (as recognized at the agreed place of payment) written notice to rectify the~~
~~failure, and when so rectified within those ... days following the Owners' notice, the payment shall~~
~~stand as regular and punctual,~~

~~Failure by the Charterers to pay the hire within .... days of their receiving the Owners' notice as~~
~~provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above.~~    15

(c)  Last Hire Payment                                                                      16
                                                                                           16

Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate    16
payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and    16.
the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking    16.
into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for

the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the
balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be
refunded by the Owners or paid by the Charterers, as the case may be.

(d)    Cash Advances

Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required
by the Owners, subject to 2 ½ percent commission and such advances shall be deducted from the hire.
The Charterers, however, shall in no way be responsible for the application of such advances.

12.    Berths

The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place or
anchorage that
Charterers of their agent may direct, provided the Vessel can safely enter, lie and depart always afloat
at any time of tide except Brazilian and Argentinea ports, River Plate, Buena Ventura where NAABSA
Clause is applied.

13.    Spaces Available

(a)    The whole reach of the Vessel's holds, decks, and other cargo spaces (not more than she can
reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the
Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle,
apparel, furniture, provisions, stores and fuel.

(b)    In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the
Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a
result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.
(See Clause No. 92)

14.    Supercargo and Meals

The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers'
risk and see that voyages are performed with due despatch. He is to be furnished with free
accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of
.. US$10. ........ per day. The Owners shall victual pilots and customs officers, and also, when
authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,
Charterers paying at the rate of a lumpsum of US$1,300 monthly or pro rata for cable/entertainment
per meal for all such victualling.

15.    Sailing Orders and Logs
    (See Clause No. 51)
The Charterers shall furnish the Master from time to time with all requisite instructions and sailing
directions, in writing, in the English language, and the Master shall keep full and correct deck and engine
logs of the voyage or voyages, which are to be patent to the Charterers or their agent, and furnish the
Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs,
showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts
required by the Charterers shall be in the English language.

16.    Delivery/Cancelling
If required by the Charterers, time shall not commence before *0001Hours December 19, 2005 at*

*local time* . . . . . . . . . . . . . . . and should the     1!
Vessel not be ready for delivery on or before *December 26, 2005 but not later than 2400 hours at*     2C
*local time*, the Charterers shall have the option of cancelling this Charter Party.     2C
2C
<u>Extension of Cancelling</u>     2C
2C
2C

If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready     2C
for delivery by the cancelling date, and provided the Owners are able to state with reasonable certainty     20
the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is     
expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will     20
cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two     20
days or be the cancelling date, whichever shall first occur, then the seventh day after the expected date     20
of readiness for delivery as notified by the Owners shall replace the original cancelling date. Should the     
Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers     20
in accordance with this Clause.

21
**17.**  <u>Off Hire</u>     21
(See Clause No. 58)     21
In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency     21
or stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the     21
arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants,     21
agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless     21
resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or     21
painting bottom, or by any other similar cause preventing the full working of the Vessel, the payment of     21
hire and overtime, if any, shall cease for the time thereby lost. Should the Vessel deviate or put back     
during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident     
to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be suspended from the time     21'
or her deviating or putting back until she is again in the same or equidistant position from the destination     
and the voyage resumed therefrom. All bunkers used by the Vessel while off hire shall be for the Owners'     22(
account. In the event of the Vessel being driven into port or to anchorage through stress of weather,     22
trading to shallow harbors or to rivers or ports with bars, any detention of the Vessel and/or expenses     22:
resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be     22:
reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and     22
the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses may be     22(
deducted from the hire.     22(
22'
**18.**  <u>Sublet</u>     22(
22(

Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of     23(
the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this     23:
Charter Party.     23(

29(
**19.**  <u>Drydocking</u>     234
23(
~~The Vessel was last drydocked~~ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     23(

*(a) The Owners shall have the option to place the Vessel in drydock during the currency of the Charter     237
at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for     
bottom cleaning and painting and/or repair as required by class or dictated by circumstances.     23(
23(
*(b) ~~Except in case of emergency no drydocking shall take place during the currency of this Charter~~     24(

~~Party.~~

24

~~* Delete as appropriate~~

24

### 20.  Total Loss

24

Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once.

24
24

### 21.  Exceptions

24
24

The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents or the seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always mutually excepted.

24

24

### 22.  Liberties

25
25

The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessel in distress, and to deviate for the purpose of saving life and property.

25

### 23.  Liens

25
25

The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due under this Charter Party, including general average contributions, and the Charterers shall have a lien on the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once.

25
25

25

The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, which might have priority over the title and interest of the Owners in the Vessel.  The Charterers undertake that during the period of this Charter Party, they will not procure any supplies or necessaries or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time.

25
25

25

### 24.  Salvage

26
26

All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting Owners' and Charterers' expenses and crew's proportion.

26.
26.

### 25.  General Average

26
26

General average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, or any subsequent modification thereof, in . . . London . . . .  and settled in  US Dollars . . . . . . . . . . . . . . currency.

26
26'

26

The Charterers shall procure that all bills of lading issued during the currency of the Charter party will contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules 1974, as amended  1990, or any subsequent modification thereof and will include the  "New Jason Clause" as per Clause 31.

26
27

Time charter hire shall not contribute to general average.

27

27

### 26.  Navigation

27
27

Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew, and all other matters, same as when trading for their own account.

### 27.   Cargo Claims

Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club New York Produce Exchange Agreement of February 1970, as amended May, 1984, or any subsequent modification or replacement thereof.

### 28.   Cargo Gear and Lights

The Owners shall maintain the cargo handling gear of the Vessel which is as follows:  . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
providing gear (for all derricks or cranes) capable of lifting capacity as described. The Owners shall also provide on the Vessel sufficient lights for night work lights as on board, but all additional lights over those on board shall

be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel. If required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or insufficient power to operate the same, the Vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers and the Owners to pay stevedore stand-by charges occasioned thereby, unless such disablement or insufficiency of power is caused by the Charterers' stevedores. · If required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which case the Vessel shall remain on hire.

### 29.   Crew  Overtime
(See Clause No. 69)
~~In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents, the Charterers shall pay the Owners, concurrently with the hire . . . . . . . . . . . . . . . . . . . . . . per month or pro rate.~~

### 30.   Bills of Lading

Signature:

Charterers' Liner Bill(s) of Lading to be used if required by Charterers and Charterers or their Agents to have the authority to sign Bill(s) of Lading on Master's behalf in conformity with Mates receipt.

Letter of Indemnity:

Owners to allow Charterers to discharge full cargoes without presentation of original Bill(s) of Lading by providing with Letter of Indemnity in accordance with Owners' P. and I. Club form and wording together with copies of signed Bs/L before discharging.  Letter of Indemnity to be signed by Charterers only.

Charterers to issue the said Letter of Indemnity in advance to Owners before commencement of

discharging of cargoes.   If impossible to deliver the original Letter of Indemnity to Owners prior to discharging of cargoes, Charterers shall fax them to Owners together with copies of the Cargo Manifest in advance followed by mailing/sending the original Letter of Indemnity to Owners within 7 (seven) days of completion of discharging.   Charterers hereby confirm that they shall indemnify Owners against all consequences arising from Owners conforming to Charterers' request to discharge cargoes against Letter of Indemnity without production of original Bill(s) of Lading.

(See Clause No. 91)

## 31.   Protective Clauses

This Charter Party is subject to the following clauses all of which are also to be included in all bills of lading or waybills issued hereunder;

(a)   CLAUSE PARAMOUNT

"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, the Hague Rules, or the Hague–Visby Rules, as applicable, or such other similar national legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said applicable Act.   If any term of this bill of lading be repugnant to said applicable Act to any extent, such term shall be void to that extent, but no further."

and

(b)   BOTH–TO–BLAME COLLISION CLAUSE

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants or the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non–carrying ship or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non–carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non–carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

and

(c)   NEW JASON CLAUSE

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship

or ships belonged to strangers.  Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

and

(d)   U.S. TRADE-DRUG CLAUSE   (See Clause No. 90)

~~"In pursuance of the provisions of the U.S. Anti-Drug-Abuse Act 1986 or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board the Vessel.~~

~~Non-compliance with the provisions of this Clause shall amount to breach of warranty for consequences of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly.  Furthermore, all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this clause shall be for the Charterer's account and the Vessel shall remain on-hire.~~

~~Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their expense put up the bails to secure release of the Vessel.~~

~~The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the Vessel's personnel."~~

and

(e)   WAR CLAUSES

"(i)   No contraband of war shall be shipped.  The Vessel shall not be required, without the consent of the Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de facto authority or any purported governmental organization maintaining naval, military or air forces.)

(ii)   If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of  . . . . . . . . . . . . . . . . . . . . in addition, the Owners may purchase and the Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping, etc.  If such insurance is not obtainable commercially or through a government program the Vessel shall not be required to enter or remain at any such port or zone.

(iii)   In the event of the existence of the conditions described in (i) subsequent to the date of this Charter, or while the Vessel is on hire under this Charter, the Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities.

(iv)   Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the Charterers' account."

32.   War Cancellation
   (See Clause No. 75)
In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries : . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . .
either the Owners or the Charterers may cancel this Charter Party.  Whereupon, the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 10: If she has cargo on board, after discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners.  In all cases hire shall continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this Charter Party shall apply until redelivery.


33.   Ice

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and remain in the port or area or to get out after having completed loading or discharging.  Vessel is not allowed to force ice nor to follow ice breaker

34.   Requisition
   (See Clause No, 78)
~~Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by the Owners.  The period during which the Vessel is on requisition to the said government shall count as part of the period provided for in this Charter Party.~~

~~If the period of requisition exceeds . . . . . . . . . . . . . . . months, either party shall have the option of cancelling this Charter Party and no consequential claim may be made by either party.~~

35.   Stevedore Damage
   (See Clause No. 55)
~~Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 48 hours after any damage is discovered.  Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.~~

~~(a)   In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society.~~

~~(b)   Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work.  In such case no hire and/or expenses will~~

~~be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work.~~

36.   Cleaning of Holds
      (See Clause No. 68 & 69)

~~The charterers shall provide and pay extra for sweeping and/or washing and/or cleaning of holds between voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by local regulations, at the rate of . . . . . . . . . . . . . . . . . . . . . . . . . . per hold.~~

~~In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not accepted or passed by the port or any other authority.  The Charterers shall have the option to re-deliver the Vessel with unclean/unswept holds against a lumpsum payment of . . . . . . . in lieu of cleaning.~~

37.   Taxes
      (See Clause No. 50)

~~Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter Party including and taxes and/or dues on cargo and/or freights and/or sub-freight and/or hire (excluding taxes levied by the country of the flag of the Vessel or the Owners).~~

38.   Deleted

39.   Laid Up Returns

The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum period of 30 days if on full hire for this period or pro rata for the time actually on hire.

40.   Documentation

The Owners shall provide any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial responsibility for oil pollution, provided such oil pollution certificates are obtainable from the Owners' P & I club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate of registry and certificates relating to the strength and/or serviceability of the Vessel' gear.

41.   Stowaways

(a)   (i)  The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers.

      (ii)  If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipping by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them.  Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire.

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

(b)   (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipping by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire.
(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

## 42.  Smuggling
(See Clause No. 56)

In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.

## 43.  Commissions

A commission of  1.25   percent is payable by the Vessel and the Owners to *Berge Shipbrokers, S.A., Madrid.* . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
on hire earned and paid under this Charter, and also upon and continuation or extension of the Charter.

## 44.  Address Commission

An address commission of *2.5.* . . . . . . . . . . . . . . . percent is payable to *charterers* . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . on hire earned and paid under this Charter.

## 45.  Arbitration

(a)  ~~NEW YORK~~

~~All disputes arising out of this contract shall be arbitrated at New York in the following manner, and subject to U.S. Law:~~

~~One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc.~~

~~For disputes where the total amount claimed by either party does not exceed US$~~ . . . . . . . . . . ** 5C
~~the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society~~ 5C
~~of Maritime Arbitration Inc.~~ 6C

(b)   LONDON      (See Clause No, 88) 50
~~All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree~~ 60
~~forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business~~ 50
~~in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping,~~
~~one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire.   No~~ 50
~~award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as~~ 51
~~above, unless objection to his action be taken before the award is made.   Any dispute arising hereunder~~ 51
~~shall be governed by English Law.~~ 51
~~For disputes where the total amount claimed by either party does not exceed US$~~ . . . . . . . . . ** 51
~~the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime~~ 51
~~Arbitrators Association.~~ 51

51
~~* Delete para (a) or (b) as appropriate~~ 51

61
~~** Where no figure is supplied in the blank space this provision only shall be void but the other provisions~~ 51
~~of this clause shall have full force and remain in effect.~~

52(
If mutually agreed, clauses . . . . 47 . . . to  . . 120  . . . , both inclusive, as attached hereto are fully
incorporated in this Charter Party, 52
52

52
52


OWNERS :                                     CHARTERERS :
Hanjin Shipping Co.,Ltd              Compañia Trasatlantica Española S.A.


_____                    _____

## APPENDIX "A"

To Charter Party dated .................................................................. 52

Between  ...................................................................... Owners

And  ........................................................ Charterers

                                                                                          52

                                                                                          52

Further details of the Vessel :                                                            52.

                                                                                          52

                                                                                          53(

**Rider clauses to the Charter Party dated**
**14th December,2005 for M.V. "Great River"**

**47. Vessel's numbers and specifications**

SHIP'S PARTICULAR

**1. VESSEL NAME**    : GREAT RIVER

**2. OWNERS NAME**    : Pinglin Shipping Co.,Ltd.

**3. TYPE OF VESSEL : BULK/LOG**
   WITH COMBINED FLUSH DECKER, AFT ENGINE AND DECK HOUSE.

**4. CONFIRM VESSEL IS STRENGTHENED FOR THE CARRIAGE OF HEAVY CARGOES AND SUITABLE FOR ALTERNATE HOLD LOADING : YES**
   NUMBER OF HOLDS WHICH MAY BE LEFT EMPTY WHEN OTHER FULL    (ALL COMBINATIONS)
   - SUITABLE FOR ALTERNATE HOLD LOADING
   - FULL : NO.1 / 3 / 5 HOLD,    EMPTY : NO.2 / 4 HOLD
**5. VESSEL IS FITTED CO2 AND NATURALLY VENTILATED : YES**
**6. VESSEL IS COMPLIED WITH SOLAS 88 AMENDMENT    : YES**
**7. BUILT YEAR, PLACE : 15.Dec.2004  / :OSHIMA SHIPBUILDING CO.,LTD.**
   EX NAMES       :
   FLAG           : HONGKONG
   PORT OF REGISTRY / NO : HONGKONG / SGR IMO 9268930; OFFICIAL NO. HK1435
   CLASS / CLASS NO    : KR / 0457741

**8.**          DEADWEIGHT  /  DRAFT (ext.)  /   TPC

| | | | |
|---|---|---|---|
| SUMMER  SW | 33,745 | 10.084 | 43.93 T |
| WINTER   SW | 32,825 | 9.874 | 43.84 T |
| TROPICAL SW | 34,668 | 10.294 | 44.00 T |
| TROPICAL FW | 34,646 | 10.522 | 44.08 T |

**9. LIGHT DISPLACEMENT**       :  6345 MT

**10. GRT/NRT**
   - INTERNATIONAL GRT/NRT : 19,829    MT  /  11,455    MT
   - PANAMA CANAL GRT/NRT :  -        / 16,555  MT
   – SUEZ CANAL GRT/NRT    : 20,291.87 MT  / 18,315.61 MT

**11. LOA/LBP**       : LOA 174.700 M / LBP 166.00 M
   BEAM        : 27.80 M
   DEPTH MOULDED  : 14.33  M
   HOLD/HATCH NO. : 5H / 5H

**12. HOLDWISE CARGO CAPACITY**

| | GRAIN | BALE |
|---|---|---|
| H/1 | 7,251 | 6,987 |
| H/2 | 9,500 | 9,272 |
| H/3 | 9,521 | 9,303 |
| H/4 | 9,501 | 9,281 |
| H/5 | 8,626 | 8,484 |
| TTL | 44,399  TRIMING | 43,327 UNTRIMING |

**13. HATCH/HOLD SIZES**
   HATCH SIZE : NO.1 HATCH    : 13.95 M x 15.20 M
             NO.2 - NO.5 HATCH : 19.53 M x 19.00 M

14. TANK TOP DIMENSION (W X L)
   HOLD 1 =   L 25 X B (FORE)6.5 X (AFT) 21.
   HOLD 2 =   L 28 X B 21.
   HOLD 3 =   L 28 X B 21.
   HOLD 4 =   L 28 X B 21
   HOLD 5 =   L 28 X B (FORE)21   X (AFT) 7.4
15. HOLD DIMENSIONS (WIDTH X LENGTH X DEPTH)
   HOLD 1 =   L 25 X B (FORE)6.5 X (AFT) 21X H 13 M
   HOLD 2 =   L 28 X B 21 X H 13 M
   HOLD 3 =   L 28 X B 21 X H 13M
   HOLD 4 =   L 28 X B 21 X H 13M
   HOLD 5 =   L 28 X B (FORE)21   X (AFT) 7.4   X H 13 M
16. STRENGTH
      - UPPER DECK   :   NO1        : 3.64 MT/M2 ,
                        NO2 - NO5      : 4.22 MT/M2
         - HATCH COVER  : NO.1    :  2.45 MT/M2
                        NO.2 - NO.5 :  3.02 MT/M2
         - INNER BOTTOM : NO.1,2,4,5 CARGO HOLD : 18 MT/M2 , NO3 CARGO
HOLD : 21MT/M2
         - CROSS DECK :1.99MT/M2

17. CARGO CRANE TYPE : HDHS 3024 Tsuji Heavy Industries Co.Ltd.
    CAPACITY (SWL)   : 4 SETS OF CRANES, 30.0T/24M AT 20DEG.
    NUMBER AND WHERE   : 4 PC / BTWN HATCHS
    A) MAXIMUM OUTREACH FM SHIPSIDE AND CORRESPONDING SWL :
       24M / 30MT
    B) SLEWING/HOISTING SPEED
       -  SLEWING   : AVE.0.75 RPM
          HOISTING : 30TX19M/MIN
                     18TX24M/MIN
                     6TX50M/MIN
    C) CONFIRM VSL CAN SUPPLY 440 VOLT 3 PHASE 60 CYCLES AND 40 KVA PER
CRANE FM ENGINE ROOM :  YES
    - CRANE MOTOR: AC170KW    ED 40% 1 SET / EACH CRANE.
       HEIGHTS   - CRANE PEDESTAL HEIGHT FROM MAIN DECK : 9900mm
                 - FROM TOP OF HATCH COVERS          : 7840mm.
       GRABS    : NO GRABS FITTED

18. STANCHIONS : VESSEL HAVE FITTED PERMANENT / COLLAPSIBLE  STANCHIONS.
    HEIGTH OF PERMANENT AND COLLAPSIBLE STANCHIONS FROM MAINDECK   (UPP.
    DECK SIDE LINE):
    NO.1 : 7500mm No2~No5 : 8700mm.
    FROM TOP OF HATCH COVERS  :
    NO.1: 4999mm NO.2~5 : 6220mm

19. TPC       : 43.93 MTONS BASIS FULLY LADEN.

20. CONSTANT : ABOUT 133 MTONS EXCLUDING FRESH WATER.

21. TANK CAPACITIES (BASIS 100 % FULL)
    FRESH WATER : 225.4   M3(100% FULL)
    FUEL OIL    : 1,352.4 M3 / 1149.54 M3 (FULL 85%)
    MDO        : 151M3 /    128.35 M3 (FULL 85%)

22. BALLAST CAPACITIES (S.G 1.025)
    NO.1 T.S.T / W.B.T   (P)        710.2M3
    NO.1 T.S.T / W.B.T   (S)        710.2M3
    NO.2 T.S.T / W.B.T   (P)        1034.5M3
    NO.2 T.S.T / W.B.T   (S)        1034.5M3
    NO.3 T.S.T / W.B.T   (P)        777.1M3
    NO.3 T.S.T / W.B.T   (S)        777.1M3
    NO.4 T.S.T / W.B.T   (P)        773.5M3

|                        |          |
|------------------------|----------|
| NO.4 T.S.T./ W.B.T  (S) | 773.5M3  |
| NO.5 T.S.T / W.B.T  (P) | 748.4M3  |
| NO.5 T.S.T./ W.B.T  (S) | 748.4M3  |

F.P.T    - 1027.8M3
A.P.T    -  684.2M3
NO.3 CARGO HOLD -9521.0M3

23. FUEL CONSUMPTION :
-At Sea
1) Fully Laden on 10.084m SSW
   About 13.5Knots on about 22.6MT IFO (380CST) for M/E and about 1.5MT IFO (380
   CST)+about 0.1MT MDO for D/G/E
2) In Ballast
   About 14.5Knots on about 22.6MT IFO (380CST) for M/E and about 1.5MT IFO (380
   CST)+about 0.1MT MDO for D/G/E

- In Port:
1) When idle: About 2.5 MT IFO (G/E & Boiler)+about 0.1MT MDO for D/G/E (For D/E
   Alternation Operation)
2) When all cargo gears working: About 4.5 MT IFO (G/E & Boiler) + about 0.1MT MD
   O for D/G/E (For D/E Alternation Operation).

24. BUNKER SPECS - FUEL OIL : IFO  380CST ISO 8217: RMG35
                        - MDO    :  MDO  ISO 8217 DMB.

25. MAIN ENGINE : KAWASAKI MAN B & W 6S46MC-C(derating)
               MCR / 8,470 PS(6,230 KW) X 113.0 RPM
               NCR /  7,200 PS(5,295 KW) X 107.0 RPM

   GENETATORS   : Daihatsu 5DC-17 x 2sets 471kW(640ps) X 900rpm

25. HEIGHT FROM KEEL TO TOP OF MAST : 41.8M.

26. DISTANCE(METRES) FROM WATERLINE TO TOP OF HATCH COAMINGS:
   (OR TOP OF HATCH COVERS IF SIDE-ROLLING HATCHES) BASIS 50 PCT BUNKERS
   (F.W : 169MT (75%) BASIS )
   A) BALLAST CONDITION (BALLAST HOLDS NOT FLOODED)  :11.14M
   B) FULL BALLAST CONDITION (BALLAST HOLDS FLOODED) : 9.24M

27. DISTANCE (METRES) FROM KEEL TO TOP OF HATCH COAMINGS (OR TOP
   OF HATCH COVERS IF SIDE-ROLLING HATCHES) AT -
     A. NO 1 HATCH : 16.9 M
     B. MIDSHIPS     : 16.9 M (15850 MM)
     C. LAST HATCH : 16.9 M

   At Mid Ship section, Height from Keel to Hatch Cover: 16810 mm
   Hatch Cover : 960 mm
   Hatch Coaming: 1100 mm
   Deck Camber: 420 mm
   Hull Depth: 14330 mm

28. DISTANCE FROM SHIP'S RAIL TO NEAR AND FAR EDGE OF HATCH
COVERS/COAMING NEAR AND FAR (METRES) :3.7 M / 5.4M
   DISTANCE FROM BOW TO FORE OF 1ST HOLD OPENING (METRES)  :  18.3 M
   DISTANCE FROM STERN TO AFT OF LAST HOLD OPENING (METRES):  29.3 M
   DISTANCE FORE PART HATCH NO.1 TO AFT PART HATCH NO.5     : 125.1 M

29. P & I CLUB : GARD P&I

30. CALL SIGN : VRAO7
   MMSI: 477320900

INMARSAT(B) TLX/FAX/TEL NO.  : 347779194 / 347779192 / 347779190/91
INMARSAT(C) NO.             : 447700120
E-MAIL ADDR                 : gtri@cidoship.amosconnect.com


**ALL DETAILS ABOUT - ALL DETAILS GIVEN IN GOOD FAITH BUT WITHOUT GUARANTEE**

48.trading exclusion

The vessel is to be employed in lawful trades for the carriage of lawful merchandises only between good and safe berths, ports or areas.

The vessel is to be employed within IWL specially excluding C.I.S Pacific ports, el Salvador, Nicaragua, Somalia, North Korea, Namibia, Great Lakes, Abkhazia, Algeria, Bangladesh, Eritrea, Falkand Islands, Indian ports north of 18deg. North west of 73deg.east, Indonesia excluding transiting vessels, ivory coast, Jamaica, Jordan ,Liberia, Myanmar, Nigeria, Oman , Pakistan, Persian and Arabic gulf adjacent waters including the gulf of Oman north of 24deg.north, sea of azov, Sierra Leone, Sri Lanka, Timor, Western Sahara,

Cambodia, Turkish occupied Cyprus, Kuwait, Iraq, Somalia, Yemen, Ethiopia, Israel and Israelian controlled Territories, Lebanon, Syria, Libya (including Gulf of Sidra/Sirte), Zaire, Angola (including Cabinda), Haiti, Cuba, Albania, Former Yugoslavia , all war and war-like zones.

The vessel is not allowed at any time to trade to the ports/areas, which are prohibited from trading by the United Nations and/or

International Organizations of the U.N. and/or the authorities of the country under which flag the vessel is flying.

No direct sailing between Mainland China and Taiwan, between South and North Korea.


49.Cargo Exclusions:

It is understood that the vessel is not employed in the carriage of the following cargoes :

-All dangerous, hazardous, injurious, inflammable cargoes, goods/commodities as listed in the latest IMO D.G Code and/or any subsequent modifications/amendments thereof, nuclear and radio-active cargo waste/material or its products, asphate nuclear, isotopes, war materials, arms and ammunitions, explosive materials, livestock/animals, any kinds of logs/mahogany logs, shavings, beam cuttings and cut beam, calcium nitrate, calcium , pesticides, turpentine, cotton, waste paper, sunflower seed, rape seeds, soyacakes, oilcakes, seedcakes, manioc and manioc pellets, expellers, copra, pyrites, resin, asbestos, fish meal, meat bone meal, bones, hides of any kind, direct reduced iron ore, HBI, full shipment of pig iron, ferro silicon, bulk borax, salt , dangerous chemicals, zinc ashes, naphtha, quebracho, iron ore briquettes, sponge iron, oil of any kind and in any form, gasoline, ammonia petroleum or its products, petcoke, asphalt, pitch (in bulk/drums), tar/bitumen or any of its products, ammonium nitrate/sulphate, creosoted goods, acids, calcium carbide/chloride and derivatives thereof, hydrochloride, caustic soda, soda ashes, any kind of US grain, sulphur, Indian coal, charcoal, bulk cement, scrap of any kind, motor spirits, fuel, motor blocks and metal turnings/shavings/borings/cuttings, deck cargoes and all other unlawful commodities.

-Notwithstanding the above, Charterers are allowed to load maximum 1 shipment either full or part cargo out of
Petcoke/ Sulphur/salt under the currency of this charter but not last voyage and in accordance with Owners' respective protective clauses

- Petcoke protective clause
  (a) Petroleum coke mentioned herein is only limited to the type of non-hazardous/non-dangerous green delayed type and/or calcined type
  (b) If Charterers exercise such option, Charterers undertake to used holds as less as possible, provided vessel's stability trim and stress permit
  (c) Such cargo is to be loaded/stowed/trimmed/discharged strictly according to the latest IMO and/or any other latest regulations/rules applicable to such cargo
  (d) Should any additional/special washdown of holds before loading be required when loading grain is to be recommended/proposed/required by the Master, Charterers undertake to arrange the same at their time/expense.
  (e) after discharge Charterers are to arrange at their expense/time of any additional/special materials (including chemical) required to carry out such holds treatment as the Master considers it necessary
  (f) Any extra expenses resulting therefrom/incurred thereby (such as hold cleaning to the Master's satisfaction/hold survey etc.)
  and/or any detention through any of above causes are for Charterers' account
-Salt Protective Clause
  (a) Charterers undertake to use holds as less as possible, provided vessel's stability trim and stress permit
  (b) Before loading, all holds assigned for rock salt are to be washed down by fresh water and lime-washed by Charterers at their
  time/expense/risk to the entire satisfaction of the Master and independent surveyors appointed by Charterers at their time/expense.
  (c) Cargo is to be loaded/stowed/trimmed/discharged strictly according to the latest IMO and/or any other latest regulations/rules    applicable to such cargo.
  (d) All fresh water used for irrigation onto rock salt during loading/voyage/discharging are for Charterers' accounts
  (e) After discharge Charterers undertake thorough cleaning of holds including removal of lime wash coating and to supply sufficient
  fresh water at their expense for washing down of all holds to the satisfaction of the Master.
  (f) Any extra expenses resulting therefrom/incurred thereby (such as hold cleaning to the Master's satisfaction/hold survey etc.)
  and/or any detention through any of above causes are for Charterers' account.
  (g) Charterers are allowed to use ship's crew to perform lime-washing and removal of same and re-painting as necessary against the payment of US$1,000per hold which is in additional to the normal intermediate hold cleaning, but always subject to prior consent of the Owners/Master/Crew and local regulations permitting, and all time used/expenses incurred are for Charterers' account.
  The Owners/Master are not held responsible for passing hold cleanliness for loading next cargo and for any consequences whatsoever caused due to such arrangement.

-Sulphur Protective Clause
(a) Charterers undertake to use holds as less as possible, provided vessel's stability trim and stress permit.
(b) Before loading, all holds assigned for sulphur are to be washed down by fresh water and then lime-washed by Charterers at their
time/expense/risk to the entire satisfaction of the Master and independent surveyors

appointed by Charterers at their
time/expense.

(c) Cargo is to be loaded/stowed/trimmed/discharge strictly according to the latest
IMO and/or any other latest regulations/rules applicable to such cargo

(d) All fresh water used for irrigation onto sulphur during
loading/voyage/discharging to be for Charterers' account

(e) After discharge Charterers undertake thorough cleaning of holds including
removal of lime wash coating and to supply sufficient
fresh water at their expense for washing down of all holds to the satisfaction of the
Master.

(f) Such cargo cannot be the last cargo prior to re-delivery.

(g) Any extra expenses resulting therefrom/incurred thereby (such as hold cleaning to
the Master's satisfaction/hold survey etc.)
and/or any detention through any of above causes are for Charterers' account

(h) Charterers are allowed to use ship's crew to perform lime-washing and removal of
same and re-painting as necessary against
paying US$1,000 per hold which is addition to the normal intermediate hold cleaning,
but always subject to prior consent of the
Owners/Master/crew and local regulations permitting, and all time used/expenses
incurred are for Charterers' account.   The
Owners/Master are not held responsible for passing hold cleanliness for loading next
cargo and for any consequences whatsoever
caused due to such arrangement.

## 50.Tax

-Any taxes levied any government other than that of Owner's
domicile or the ship's flag in respect of the earnings of the vessel
under Time Charter shall be for Charterers' account.

- u.s. income tax - time charters
   notwithstanding anything else contained in this charter party,
   any tax imposed by the provisions of the u.s. tax reform act of
   1986, as amended from time to time, and set forth at section 887
   of the internal revenue code of the u.s., (including any successor
   provision thereto and any regulations applied by the u.s. internal
   revenue services in respect of such tax) and payable by the
   owners in respect of gross transportation income derived under
   this charter party from the vessel's operation to and from u.s.
   ports and from cargoes delivered to or shipped from u.s. ports,
   shall be covered by Charterers and paid to owners together with
   the relevant hire payment due at the time, on the presentation
   of owners' calculation/invoice. owners shall not be required to
   seek exemption from said tax, even if they could qualify for
   such exemption.

## 51.Instruction

   Charterers shall furnish the master from time to time with all
   requisite instructions and sailing directions, in writing or by
   telegram and the master shall keep a full and correct log of the            voyage,
   showing, inter-alia, the course of the vessel and distance run and the consumption of
   fuel oil, which is to be patent to Charterers or their agents, a true copy of is to be sent to
   Charterers from each port of call on the voyage and
   immediately after completion of the voyage, together with any
   other information which the master deems necessary.

**52.Withdrawl due to non-payment of hire**
    When hire is due and not received owners, before exercising the option of withdrawing the vessel from the Charter party, will give Charterers seventy two(72) hours notice Saturdays, Sundays, and Holidays excluded and will not withdraw the vessel if the hire is paid within these seventy two(72) hours.

**53.Hold condition on delivery**
    Vessels holds on arrival at first load port to be clean swept/washed down by fresh and dried up so as to receive cargoes with grain cleanliness in all respects, free of salt/rust scale and previous cargo residue to the satisfaction of Governmental and/or USDA/NCB and/or local independent surveyors as grain cleanliness, full self trimming bulk carrier and fully equipped for grain loading according to SOLAS regulations, the vessel to be placed off-hire until the vessel is fully accepted and any/all expenses/time to be for Owners' account.

**54.Hatch opening/ closing, etc**
    All opening and closing of hatches to be done by the vessel's crew, if requested by Charterers, provided it is allowed by shore regulations.

**55.Stevedore damages**
    Any damage caused by stevedores during the currency of this Charter Party shall be reported by the Master to the Charterers or their agents, in writing, within 48 hours of the occurrence or as soon as possible thereafter but latest when the damage could have been discovered by the exercise of due diligence. The Master shall use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage should have been made good in the meantime. Stevedore damage affecting seaworthiness or the proper working of the Vessel and/or her equipment, shall be repaired without delay to the Vessel after each occurrence in the Charterers' time and shall be paid for by the Charterers. Other repairs shall be done at the same time, but if this is not possible, same shall be repaired whilst Vessel is in drydock in the Owners' time, provided this does not interfere with the Owners' repair work, or by Vessel's crew at the Owners' convenience. All costs of such repairs shall be for the Charterers' account. Any time spent in repairing stevedore damage shall be for the Charterers' account. The Charterers shall pay for stevedore damage whether or not payment has been made by stevedores to the Charterers.

**56.Smuggling**
    Charterers to be responsible for any fines whatsoever imposed in the event of smuggling by Charterers' employees, but Owners to be responsible for any such acts of their own officers and/or crew.
    Charterers to remain responsible for detention of the vessel due to smuggling committed by Charterers' employees only.

**57.Boycott**
    In the event that the vessel is delayed by strikes, lockouts, boycott, labour stoppages or any other difficulties due to flag or crew or Ownership of the vessel, such time lost and any other extra expenses incurred are to be for Owners' account, including bunker fuel consumed during such periods.

**58.Deviation put back**
    In the event of loss of time either in port or at sea, deviation from the course of the voyage or putting back while on the voyage,        caused by sickness of or accident to or

misconduct by master,
officers or crew, stowaway or any other person on board the vessel other than persons
traveling by request of Charterers, or by reason of the refusal by master, officer(s) or
crew to perform their duties or of an accident or breakdown to the vessel or drydocking
or periodical survey the hire shall be suspended from the time commencement of
inefficiency in port or at sea, deviation or putting back until the vessel is again efficient in
the same
position or one not less favorable to Charterers. All expenses
incurred during such period of suspension, including cost of
bunkers consumed, to be for Owners' account.

### 59.War risk insurance
Present basic war risk insurance and crew war bonus to be for Owners' account. In
the event of increase in war risk insurance premiums, including blocking and trapping
insurance after delivery
for the trade in which the vessel is engaged to be for Charterers account. Any
increase in crew war bonus after delivery caused by the trade in which the vessel is
engaged to be for Charterers' account. When the vessel to be put to the area where any
additional war risk insurance premium to be required, Charterers shall obtain consent
from Owners to put the vessel into such area prior to calling which is unreasonably
withheld.

### 60.Consecutive off-hire
If vessel will be off-hire for longer than 45 days continuously,
Charterers to have the option of cancelling this Charter under the condition that
Charterers accept the attached Addendum.No.2.

### 61.Class maintain
Owners engage themselves to maintain the vessel KR or
equivalent during the currency of this Charter. Owners guarantee that the vessel will be
insured for full protection inspect of collision liability, i.e. 100 percent Owners' Hull and
Machinery underwriters.

### 62.Blacklist
Owners warrant that the vessel is not blacklisted by U.S.A. and ARAB authorities.

### 63.Vaccination
Owners to arrange at their expenses that the master, officers and crew of the vessel
hold valid vaccination certificates against
yellow fever or cholera or other necessary health certificates upon
delivery of the vessel and throughout the time Charter period.

### 64.Absence of crew
At loading and discharging port(s) any time lost by the vessel for reason of all the
crew not being on board when the vessel is
ready to sail to be for Owners' account as well as expenses
deriving therefrom.

### 65.Grain loading
The vessel is suitable for carrying cargoes of heavy grain in bulk in all holds without

requiring any securing arrangement, but within allowance as specified in the grain loading manual. For the
carriage of grain in bulk the vessel to have on board at any time
of this Charter period valid documents and certificates issued
by a recognized classification society and certified by national
cargo bureau on the basis of SOLAS 1974. Furthermore, the vessel on board approved table of heeling moments for "filled holds- untrimmed ends" in accordance with IMCO BC XIX/INF 4.

## 66.Alternative loading

The vessel is allowed to sail with alternative holds empty.

## 67. Deleted

## 68.In lieu of hold cleaning

In lieu of hold cleaning on redelivery,Charterers to pay Owners a lumpsum of US$4,500 excluding removal/disposal of dunnage/ lashing debris, if any.

## 69.Delete

## 70.Seizure,Detention,Arrest

Should the vessel be seized or detained or arrested or delay by any government or legitimate authority or in consequence of any legal action against Owners and/or the vessel during the currency of this Charter, Charterers' liability shall cease from the time of such seizure or detention. All time lost shall be treated as
off-hire until the time of her release and any extra expenses,
including the cost of bunkers consumed during such period, to be
for Owners' account unless such seizure or detention is
occasioned by any personal act or omission or default of
Charterers or their agents or by reason of cargo carried.

## 71.I.T.F.

The vessel shall be manned under ITF/or its affiliates
acceptable to the ITF or ITF free (as national flag) conditions
during the Charter period.

## 72.Owners' agent

Charterers agree that their officers and/or agents will deliver crew mail free of charge and assist the master over minor ship's
husbandry matters, debiting Owner with the actual costs involved.
For major ship's husbandry matters such as drydocking, changes
of major part of crew etc. Owners will appoint their own agents.

## 73.B/L Sign

Owners/master to authorize Charterers or their agent to sign
Bill(s) of Lading if required by Charterers, always in
accordance with Mate's receipt.

**74. On/Off-Hire survey**

Joint on/off-hire survey to ascertain vessel's condition and quantity of bunkers remaining on board shall be carried out on delivery and redelivery. Joint on/off hire survey to be carried out on delivery with no time deduction unless hindering Charterers'                operation joint off-hire survey on redelivery in Charterers' time.
Expenses to be equally shared between Owners and Charterers.
An independent surveyors acceptable to both parties to be mutually agreed.

**75. War Cancellation clause**

If war or action hostilities break out between any two of the following countries:
The United Kingdom, U.S.A., Russia, People of Republic of China and Japan, South Korea, both parties to have consult on                cancellation/continuation of this Charter on the basis of Good Will.

**76. Owners' P & I Club**

Owners guarantee that the vessel is entered and shall remain for duration of the Charter, in a Protection and Indemnity association (GARD P&I).

**77. Water Ballast**

Charterers have the right to instruct master to utilize the vessel's maximum water ballast capacity ,including floodable hold(s) in order to bring down the vessel's height to get into position under loading and/or discharging appliances however in conforming with freeboard and safety regulations.

**78. Requisition**

Should the vessel be requisitioned by the government of the vessel's flag during the period of this charter, the vessel shall be deemed to be off-hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by Owners. The period during which the vessels or requisition to the said government shall count as part of the period for in this Charter. If the period of                requisition exceeds three months, either party shall have the option cancelling this Charter and no consequential claim may be made by either party.

**79. Ocean Routes**

Charterers have the option to entrust the vessel to ocean routes and master shall furnish to same all information required.
However, the final decision of the routes shall be made by master.

**80. Oil Pollution**

Owners undertake to maintain during the currency of the Charter Party an up-to-date and valid certificate of financial                responsibility the federal maritime commission regulations and the United States Water Quality Control Act 1970 regarding oil pollution and Owners will indemnify Charterers against any failure

to maintain this certificate, including any loss of time incurred, unless caused by Charterers or their servants.

81.Off-Hire due to Water Pollution
   The vessel be off-hire during any time lost on account of the
vessel's non-compliance with government and/or state regulations pertaining to water pollution.

82.Equipment
   If the vessel calls at any U.S. port for purpose of loading or
discharging cargo, the vessel's equipment shall comply with
regulations established by U.S. Public. Law 85-742 Part(Safety
and Health Regulations for Longshoring). If longshore men are
not permitted to work, due to failure of the master and/or Owners and/or Owners' agent
to comply with the aforementioned
regulations, any delay resulting therefrom and any stevedore stand by time and other
expenses involved shall be for Owners'
account.

83.Telegraph/Telephone
   The vessel shall be equipped with wireless and VHF telephone to comply with
international regulations to allow the vessel to                    communication with land
stations.

84.Breaking IWL
   Charterers have the option to break I.W.L. against paying additional insurance
premium on presentation of   vouchers/receipt but amount not to exceed amount
charged by Lloyds of London underwriters.

85. Deleted

86.NYPE Interclub Agreement
   Cargo claims to be settled in accordance with N.Y.P.E. Interclub Agreement.

87.   Deleted

88.Arbitration
   Should any dispute arise between Owners and the Charterers, the matter in dispute
shall be referred to three persons at   London, English law to apply, one to be appointed
by each of the parties hereto, and the third by the two so chosen: their decision, or that of
any two of them, shall be final and for the purpose of enforcing any award this agreement
may be made a rule of the court. The arbitration shall be commercial men conversant
with shipping matters. In cases where neither the claim nor any counter claim exceeds the
sum of US$50,000, the arbitration shall be conducted in accordance with the LMAA small
claims procedure current at the time when the arbitration procedures are commenced.

89.Non-Production of B(s)/L
   Owners to allow Charterers to discharge cargo without

presentation of original Bill(s) of Lading by providing Owners with Letter of Indemnity in accordance with Owners P and I Club form and wording before discharging. Letter of Indemnity to be signed by Charterers only.

## 90. Anti-Drug Smuggling

Owners agree to the terms of the sea carrier initiative agreement attached. In the event of loss of time and/or extra expenses incurred by reason of any action taken or threatened by any governmental authority to prevent or detect the carriage of illicit narcotics, payment of hire shall cease for the time thereby lost and all extra expenses, including any fine and/or penalty, shall be Owners' responsibility unless it is proved that the action or             threatened action is taken solely by reason of specific acts or omission of Charterers. In any event, it shall be Owners' responsibility to provide security and/or pay any fine or penalty in order to minimize the loss of time and expenses, Charterers hereby agreeing to indemnify them in respect of the cost thereof in the event of Charterers being found liable hereunder.

## 91. On Deck Loading

Charterers' option to load cargo on deck and/or hatch covers which to be loaded in accordance with vessel's stability, seaworthiness and strength under master's supervision, but always at Charterers' /shippers' time, risk, expenses and responsibility.

Charterers must describe following remarks on the Bill(s) of Lading when the vessel to load cargo on deck:
Remark:" carried on deck at shippers risk"
In case the vessel to load lumber on deck, following remark to be described on the bill(s) of Lading:
Remark:" carried on deck at shipper's risk.
Owners not responsible for any loss or damage thereto however caused"

## 92. Gangway Watchmen

Gangway watchmen to be for the account of the party who appoint the same, otherwise to be equally shared between both parties.

## 93. Saving Life, Refugee

Owners shall have the liberty to deviate for the purpose of saving life at sea and landing the person saved. But in case it is found the person is a refugee, any time hereby lost and extra expenses to be for Owners' account

## 94. Crane Breakdown

In the event of breakdown of a crane or cranes by reason of disablement or insufficient power, the hire to be reduced pro rata for the period of such inefficiency in relation to the number of crane(s) available. Owners to pay in addition the cost of labour either idle or additionally engaged, because of the breakdown. This does not exempt Owners from liability for the cost of hiring shore appliance, if required by Charterers, in accordance with Clause No.28. If shore appliances are hired by Owners the hire of the vessel to be paid in full deducting actual time lost by breakdown.

## 95. Deratting Certificate

The vessel to be delivered with valid deratisation or deratisation exemption certificate on board, and if this does not cover the whole period of this Charter and renewal of certificate and sanitary inspection certificate or fumigation is necessary, cost of same and delay of the vessel and any expenses incurred
therefrom to be for Owners' account, unless caused by port called or cargoes under this Charter Party.

## 96.Quarantine

Normal quarantine time and expenses to enter the port to be Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness, etc., of master, officer and crew to be for Owners' account, unless caused by ports called or cargoes carried under this Charter Party.

## 97.Stowage Collection of Dunnage, etc

Owners and master to understake best efforts to cooperate with Charterers for best stowage of cargo, and master to make best efforts to collect, restow, and provide any useful dunnage, lashing, etc., including pre-slings/wire sling, not broken for next use after completion of the voyage, during the currency of this Charter, if requested to do so by Charterers.

## 98.Welding Padeyes

Charterers option to weld padeyes with master's satisfaction and Charterers further option to redeliver the vessel without removal of padeyes, in consideration of which Charterers to pay Owners US$10.00 per padeyes, but the location where padeyes be welded is always subject to master's approval.

## 99.Supercargo on board

Owners are indemnified from consequences of having supercargo or Charterers agents appointed by Charterers on board the vessel including but not limited to their death or injuries except caused by the crew or master on board.

## 100.Trading Shallow Harbour

In the event of the vessel being driven into port or to anchorage thorught stress of weather, trading to shallow harbours or to rivers or ports within bars, any detention of vessel and/or expenses resulting from such detention to be for Charterers' account..

## 101.Clause Paramount,etc

New Jason Clause,New Both-To-both Blame Collision Clause, Baltime War Clause 1939 (except "Charter(c),and the Hague 1924 rules and legislation shall be deemed to be incorporated in this Charter Party and Bill(s) of Lading issued hereunder.

## 102.Return Insurance

Charterers to have the benefit of any return insurance premium receivable by Owners from their underwriters,as and when received from their underwriters by reason of the vessel being in port for a minimum period of 30 days,provided the vessel is on hire during the same period.

## 103.Far East Call

The Charterers cooperate to allocate the vessel(s) to Far East once in Two and Half years interval for Dry-docking in Far East. Owners give the Charterers Six(6) months prenotice dry docking schedule.

104. 1st hire and value of bunkers on delivery quantity to be paid within 3 banking days after vessel's delivery. Charterers are entitled from last sufficient hire payments Owners' estimated disbursement US$1,000 per each port of call, as well as the value of estimated bunkers on redelivery quantity.

105. Vessel have to comply with all regulations/requirements at port of call, furthermore Owners guarantee that vessel is free of any Asian Gypsy Moth Eggs or Larve any form of Asian Gypsy life.
Owners guarantee that vessel not called in Russian Fareast area from Posyet to Olgabay including Vladivostok, Nakhodka and Vostochiny. Any delay caused by non-compliance with the aforesaid, vessel will be placed off-hire and expenses incurred resulting from such delay including bunkers consumed during that period will be for Owners' account.

direct to vessel

106. From the date of coming into force of the International Safety Management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "the Company" (as defined by the ISM code) shall comply with the rerquirements of the ISM code.
Upon request the Owners shall provide a copy of the relevant documents of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter Party, loss, damage, expenses or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM code shall be for the Owners' account.

107. Owners have the right to bunker vessel for their own account under the present time Charter without interfering with Charterers' operative/cargo intakes.

108. The vessel to have the liberty of using diesel oil when entering and leaving and for maneuvering in shallow/narrow waters.

109. Deleted

110. The Owners have the right to assign this Charter Party and all earnings to the financier(s) of the vessel(s) for the security purpose.

111. Additional Vessels' Description

Cargo to be loaded/stowed/dunnaged/lashed/unlashed fully at Charterers' time/risk/ Expenses up to master's satisfaction. however, owners/master shall not be responsible. For any damage to vessel and/or cargo and/or property of third party during loading/Carrying/discharging steel slab with this option and Charterers shall be fully responsible for the aforesaid damage caused by this option. Also, Charterers shall indemnify owners/master from any claim/consequences arising from the same.

-Owners guarantee that vessel is single deck self trimming bulk carrier with engine/bridge aft
-Hatch covers are electro-hydraulic operated
-owners guarantee that vessel is not black-listed in world wide trading with AHL/ITF/CO2 in good order
-Owners guarantee that vessel is suitable for grab discharge
-Charterers are allowed to use Bulldozers/Forklift in vessel's main holds subject to vessel's tank top strength
-Owners guarantee that vessel is full selftrimming bulk carrier. If additional trimming is required, all time/expenses to be for Owners' account
-Owners guarantee that vessels hatchcovers are to be weather tight all throughout this Charter period and if any hatchcover found defective, same to be rectified at Owners' time and expenses to be independent surveyors satisfaction
-Owners guarantee that vessels holds are clear of any fitting/ superstructures such as cardeck curtain plates whatsoever
-Owners guarantee that vessel is fully fitted for Panama/Suez canal transit and possession of necessary certificate on board in conformity with current canal regulation/requirement

## 112.Preparation for Loading/Discharging
The vessel's officers and crew shall perform shaping up of the vessel's hatches, cranes and gangway prior to and upon arrival at port in order to commence loading and/or discharging operation if permitted by port regulations. The Owners and the master undertake best efforts to cooperate with the Charterers for smooth loading/discharging.

## 113.Grain Loading Certificate (See Clause No.65)

## 114.WWF Requirements
Owners guarantee that the condition of vessel with her fitting and and equipments including hold ladders comply the requirements of Australian shore labours and pilots.

## 115.Superficial Inspection
Charterers to have the option of holding a superficial inspection prior to delivery and also at any time of this Charter, Owners and Master giving every facility and assistance to carry this out.

## 116. U.S.security clause *

if the vessel calls in the united states, including any u.s. territory, the following provisions shall apply with respect to any applicable security regulations or measures:" notwithstanding anything else contained in this charter party all costs or expenses arising out of or related to security regulations or measures required by u.s. authority including,

but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the charterers' account, unless such costs or expenses result from the owners negligence/defaults."

117. Oil Spillage (See Clause No.81-82)

118. For the purpose of hire calculation, GMT to be applied.

119. bunker spec
380centistroke at 50degree c-iso 8217.the grade is over rmg35

120. bimco isps / mtsa 2005 for time charter/ bimco fuel sulphur content clause for time charter/us trade-unique bill of lading indentifier clause/us customs advance notification/ams clause for time charter to be applied.

121. Charterers to leave the vessel in seaworthy trim and with cargo onboard safely stowed/lashed/secured/separated to Master's satisfaction and discretion when shifting/sailing between loading ports/berths/anchorages and between discharging ports/berths/anchorages.

## ADDITIONAL CLAUSES

* ADDITIONAL CLAUSE 1

DUE THAT VESSEL IS NOMINATED TO LOAD A FULL OR PART CARGO OF STEEL PRODUCTS, THE OWNERS AND CHARTERERS JOINTLY TO APPOINT AND INDEPENDENT SURVEYOR TO PERFORM A " PRELOADING/UNLOADING CARGOES CONDITION SURVEY", AT CHARTERERS TIME AND JOINT EXPENSE, SHARED AT 50/50 PCT.

IN CASE OWNERS/CHARTERERS DO NOT GET AGREEMENT ON JOINT SURVEYOR, THEN EACH PARTY TO APPOINT AND PAY FOR OWN SURVEYOR.

* ADDITIONAL CLAUSE 2

THE MASTER SHALL SUPERVISE STOWAGE OF THE CARGO THOROUGHLY AND LET ONE OF HIS OFFICERS CONTROL ALL THE LOADING, HANDLING AND DISCHARGE OF THE CARGO. MASTER IS ALSO TO FURNISH CHARTERERS WITH STOWAGE PLANS AS WELL AS TALLY SLIPS AND OTHER DOCUMENTS CUSTOMARY IN LINER TRADE

* ADDITIONAL CLAUSE 3

ON AND OFF-HIRE SURVEY SHALL BE CARRIED OUT ON BOTH VESSEL'S CONDITIONS AND BUNKERS MEASUREMENT BY ONE (1) SURVEYOR WHO IS ACCEPTABLE TO BOTH PARTIES AT CHARTERERS' 1ST LOAD PORT AND REDELIVERY PORT RESPECTIVELY, THE COST BEING SHARED EQUALLY, BUT THE TIME OCCUPIED FOR ON HIRE TO BE FOR OWNERS' ACCOUNT, BUT TO BE COUNTED AS ON-HIRE PROVIDED THAT IT DOES NOT INTERFERE WITH CHARTERERS' OPERATION, AND OFF-HIRE SURVEY FOR CHARTERERS' TIME

IN CASE OWNERS/CHARTERERS DO NOT GET AGREEMENT ON JOINT SURVEYOR, THEN EACH PARTY TO APPOINT AND PAY FOR OWN SURVEYOR.

***************